UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANE DOE, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 19 C 3777 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| ST. VINCENT MEDICAL GROUP, INC., ST. VINCENT CARMEL HOSPITAL, INC., and HANNAH THORNTON, R.N., N.P., | ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

In connection with a discovery dispute in a separate Indiana case, Defendants St. Vincent Medical Group ("SVMG"), St. Vincent Carmel Hospital, Inc. (the "Hospital"), and Hannah Thornton, R.N., N.P. filed a motion to issue an authorizing order for the disclosure of the rest of Plaintiff Jane Doe's records at the Positive Sobriety Institute ("PSI"). The Court denies Defendants' motion because Defendants have not shown whether such records exist or even a good faith attempt to determine whether such records exist, and instead have attempted an end-run around their denied motion to compel such records in the Indiana case, which is not a proper use of the federal courts.

## BACKGROUND

Doe is an OB/GYN physician practicing at SVMG in Indianapolis, Indiana. She has staff privileges at the Hospital in Carmel, Indiana. Doe sued these entities, along with Thornton, an employee of the Hospital, in Indiana Commercial Court in Marion County. She is pursuing claims of fraud, constructive fraud, negligent misrepresentation, tortious interference with

employment relationship, defamation, and conspiracy. This matter is currently pending under Indiana case number 49D01-1807-PL-026160 (the "Indiana Lawsuit").

In the Indiana Lawsuit, Doe alleges that in December 2017, Thornton falsely accused her of having an odor of alcohol on her breath while she was at work. Although no one timely tested Doe's blood alcohol level, Thornton's employer, the Hospital, questioned Doe about the incident and referred the matter to Doe's employer, SVMG. SVMG placed Doe on administrative leave and did not allow her to return to work until she sought an evaluation for alcohol abuse through the Indiana State Medical Association ("ISMA").

The ISMA referred Doe to PSI in Chicago. PSI diagnosed Doe with "alcohol use disorder" and subsequently treated her for it. After completing PSI's treatment program in March 2018, Doe returned to work, subject to a five-year monitoring contract with the ISMA.

Doe disagrees with PSI's diagnosis that she is an alcoholic; however, for the purposes of the Indiana Lawsuit, Doe argues that she need not prove that PSI erred in its diagnosis to prevail on her claims.

Defendants and Doe have been engaged in this discovery dispute regarding the production of Doe's records at PSI for some time. Initially, Defendants requested that Doe sign a written authorization that would have permitted Defendants' counsel to directly request and obtain Doe's evaluation and treatment records from PSI. Doe did not sign the authorization; rather, she obtained the records from PSI and produced them to Defendants. She produced these documents under a protective order designating all documents related to her counseling and treatment records as attorney eyes' only. *See* Doc. 1-3.

The records custodian at PSI then produced documents to Defendants' counsel relating to Doe's records at PSI, "including only the Multidisciplinary Comprehensive Assessment

Program, Lab Tests, History & Physical, Treatment Plan, Progress Notes, Discharge Summary and Billing Statements." Doc. 18-1 at 2. The records custodian continued, saying "[w]e think this will give you enough information. If after review, you need more information or more records, let us know." *Id.* Defendants later responded to the records custodian, writing: "[a]ttached are the records you sent us. I just need you to review and let me know what else hasn't been sent to our offices. If there is more, we need all of it." Doc. 18-2 at 2. The records custodian replied: "[y]es, we sent you all the documents." *Id.*

Subsequently, Defendants filed a motion to compel against Doe, which the Indiana court denied with respect to the request for written authorizations for records access with PSI and ISMA. *See* Doc. 1-4 at 1. Following this denial, Defendants filed the present motion to issue a subpoena to PSI for Doe's records.

**ANALYSIS**

42 U.S.C. § 290dd-2 governs this discovery dispute, which protects the confidentiality of records containing the "identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States." 42 U.S.C. § 290dd-2(a). Two regulations, 42 C.F.R. §§ 2.63 and 2.64, control the process of disclosing these confidential records without the patient's consent. 42 C.F.R. § 2.63 lists the three instances in which a court may order disclosure:

> (a) A court order under the regulations in this part may authorize disclosure of confidential communications made by a patient to a part 2 program[1] in the course of diagnosis, treatment, or referral for treatment only if:

---

[1] The parties agree that PSI meets the requirements of a part 2 program. *See* Doc. 18 at 3; Doc. 1 at 2.

3

> (1) The disclosure is necessary to protect against an existing threat to life or of serious bodily injury, including circumstances which constitute suspected child abuse and neglect and verbal threats against third parties;
>
> (2) The disclosure is necessary in connection with investigation or prosecution of an extremely serious crime allegedly committed by the patient, such as one which directly threatens loss of life or serious bodily injury, including homicide, rape, kidnapping, armed robbery, assault with a deadly weapon, or child abuse and neglect; or
>
> (3) The disclosure is in connection with litigation or an administrative proceeding in which the patient offers testimony or other evidence pertaining to the content of the confidential communications.

42 C.F.R. § 2.63. If the request for disclosure meets one of these three criteria, the Court must then determine that good cause exists to disclose these confidential records:

> (d) Criteria for entry of order. An order under this section may be entered only if the court determines that good cause exists. To make this determination the court must find that:
>
> > (1) Other ways of obtaining the information are not available or would not be effective; and
> >
> > (2) The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services.

42 C.F.R. § 2.64.

These governing statutes and regulations "carry a strong presumption against disclosing records of this kind." *United States v. Cresta*, 825 F.2d 538, 551–52 (1st Cir. 1987). Congress made clear that the purpose of these provisions is to encourage patients to seek and receive treatment for substance abuse without fearing for their privacy. *Id.*; *see United States v. Graham*, 548 F.2d 1302, 1314 (8th Cir. 1977).

4

I. **42 C.F.R. § 2.63 Confidential Communications Requirements**

Though the parties package the bulk of their discussion on the good cause criteria, the Court hesitates to find that the confidential records at issue satisfy one of the three categories listed in 42 C.F.R. § 2.63. Because "the court must determine at the threshold that one of the subsections of § 2.63(a) applies," the Court addresses this issue first. *U.S. ex rel. Chandler v. Hektoen Inst. for Med. Research*, No. 97 C 514, 2003 WL 22284199, at *5 (N.D. Ill. Oct. 2, 2003). The parties do not contend that this case falls under either of the first two situations involving a threat to life or serious bodily injury or an investigation or prosecution of an extremely serious crime. The Court therefore turns to the third category, that the confidential records relate to litigation in which Doe "offers testimony or other evidence pertaining to the content of the confidential communications." 42 C.F.R. § 2.63(a)(3).

First the Court notes that the scope of the remaining confidential communications that Defendants want disclosed is undefined because there is some confusion as to the nature of the documents that PSI has yet to disclose. Doe and PSI have already disclosed various records to Defendants "including only the Multidisciplinary Comprehensive Assessment Program, Lab Tests, History & Physical, Treatment Plan, Progress Notes, Discharge Summary and Billing Statements." Doc. 18-1 at 2. However, PSI's use of "only" in that disclosure led Defendants to believe that PSI had more records that it could disclose. Defendants then contacted PSI asking the records custodian to "let [Defendants] know what else hasn't been sent to our offices." Doc. 18-2 at 2. Defendants find the response, "[y]es, we sent you all the documents," ambiguous. *Id*. The Court acknowledges that this could mean a few different things: it could mean that PSI has in fact sent Defendants all documents related to Doe, it could mean that PSI sent Defendants all the documents in the various categories that it listed, or it could mean that PSI sent Defendants

5

all the documents that Defendants attached in their questioning email. If the first instance were true, there would not be any remaining confidential communications under § 2.63, because Doe would have disclosed all communications already, whereas in the other instances, there may still be some undefined remaining confidential communication. Defendants contend that each instance is "[j]ust as likely." Doc. 19 at 3. Defendants now present this ambiguity as cause for their motion, without any showing of an attempt to clarify this ambiguity with the records custodian with whom they were in direct contact. Without clarity here, the Court has nothing more than Defendants' "reasonabl[e] belie[f]" and assumptions to find that remaining confidential communications exist. *Id*. at 5.

The Court turns to the potentially more fruitful issue of whether Doe has offered or plans to offer testimony or other evidence pertaining to the potential remaining confidential communications. Defendants repeatedly argue that "Doe has placed her physical and mental condition at issue," and therefore all PSI treatment records are "crucial to Defendants' defense." Doc. 1 at 4, 5. Unfortunately for Defendants, "courts addressing the issue have determined that the mere fact that someone has filed a lawsuit and has put certain facts in issue does not constitute the requisite offering of testimony or evidence under 42 C.F.R. § 2.63(a)(3)." *Local 738, Int'l Bhd. of Teamsters v. Certified Grocers Midwest, Inc.*, 737 F. Supp. 1030, 1033–34 (N.D. Ill. 1990); *see Whyte v. Connecticut Mut. Life Ins. Co.*, 818 F.2d 1005, 1010 and n. 18 (1st Cir. 1987); *Allen v. Holyoke Hosp.*, 496 N.E.2d 1368, 1372, 398 Mass. 372 (1986). Defendants also argue in their reply that Doe is offering an expert to opine about her diagnosis and therefore, Defendants are entitled to "PSI's entire file" on Doe. Doc. 19 at 5. While Defendants lament that their own expert has been limited to a review of the PSI records that Doe has already produced, Defendants make no argument that Doe's expert has reviewed or relied on any

documents outside of that scope either. This leaves the mere fact that Doe has placed certain facts at issue in this case, which does not satisfy the requirements of 42 C.F.R. § 2.63(a)(3). *Certified Grocers*, 737 F. Supp. at 1033–34.

## II. 42 C.F.R. § 2.64 Good Cause Determination

Though the Court does not find that the potential remaining confidential communications satisfy the requirements of 42 C.F.R. § 2.63(a)(3), the Court still turns to the issue of good cause.

As for the first prong of the good cause determination, "the court could find good cause for production of the patient records only if an alternative means of obtaining the information contained within them was not available. Good cause cannot be demonstrated when production of the records is merely cumulative." *In re B.S.*, 659 A.2d 1137, 1141, 163 Vt. 445 (1995). Doe argues that Defendants cannot show good cause because Doe has already produced all of her treatment records. Indeed, the Court agrees that "[i]ssuing a Court authorization for a subpoena for PSA records that Defendants already have would be unreasonably cumulative or duplicative." Doc. 18 at 6. Because Defendants have made no showing that this would not be cumulative or duplicative, the Court cannot find that Defendants have satisfied the first prong of the good cause determination.

Moreover, Defendants cannot show that "[t]he public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services." 42 C.F.R. § 2.64(d)(2). Defendants again argue that Doe has put her physical and mental condition at issue, and therefore "the concept of fundamental fairness dictates access to the Treatment Records because they are crucial to defending against" Doe's claims. Doc. 1 at 5. However, "this particular privilege is a strong one, not to be lightly set aside, and mere relevance to a potential defense is not enough." *Mosier v. American Home Patient, Inc.*, 170 F. Supp. 2d

7

1211, 1214 (N.D. Fl. 2001). Just as it is not enough for Defendants to claim mere relevance with regard to 42 C.F.R. § 2.63(a)(3), it is not enough here for Defendants to invoke "fundamental fairness" without showing anything more than mere relevance, such as Doe offering testimony, evidence, or expert opinion based on documents or records that she has not produced to Defendants. Defendants have made no such showing. If, as it appears to the Court, Doe has produced her records with PSI, and bases her testimony and evidence within the scope of those records that she has already produced, then Defendants have failed to show good cause.

Because Defendants have failed to meet any of the criteria under 42 C.F.R. § 2.63(a) and the Court cannot find good cause under 42 C.F.R. § 2.64(d), the Court denies Defendants' motion to issue an authorizing order. The Court will not allow Defendants to take an ambiguity that they could and should have clarified long before filing this motion and try to turn it into an end-run around their denied motion to compel in the Indiana proceedings.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants application to issue an authorizing order of disclosure [1].

Dated: October 8, 2019

												_____
												SARA L. ELLIS
												United States District Judge